Mrs. Vicky Gow Chairwoman Stationary Sources Subcommittee Air Quality Control Commission 4210 East 11th Avenue Denver, CO 80220
Dear Mrs. Gow:
This opinion letter is in response to Joseph Palomba, Jr.'s letter of November 13, 1981, in which he inquired for you whether or not the Air Quality Control Commission ("the commission") has the authority to make minor sources subject to the prevention of significant deterioration ("PSD") permit requirements.
QUESTION PRESENTED AND CONCLUSION
Your request for an attorney general's opinion presents the following question:
Whether the commission, pursuant to the Colorado Air Quality Control Act ("the Colorado Act"), C.R.S. 1973, 25-7-101 etseq., has the authority to make emissions sources emitting less than the major stationary sources specified in C.R.S. 1973,25-7-202(5) (1981 Colo. Sess. Laws ch. 323)[1]
(hereinafter "minor sources") subject to the PSD permit requirements of part 2 of the Act?
 My conclusion is "yes." Although part 2 of the Colorado Act mandates that PSD permit requirements apply to "major stationary sources" as defined at C.R.S. 1973, 25-7-202(5) (1981 Colo. Sess. Laws ch. 323), there is implicit authority in part 2 and express authority in other parts of the Colorado Act to make minor sources subject to such requirements.
ANALYSIS
The general purpose of the PSD permit program is "to prevent the significant deterioration of air quality in those portions of the state where the air quality is better than the national ambient air quality standards" ("NAAQS"). C.R.S. 1973, 25-7-102, -201(1) (Supp. 1980). The PSD permit program was initially established by part C of the Federal Clean Air Act, sections 160-169A (42 U.S.C. § 7470et seq.), and may be administered by a state with an implementation plan containing measures required by federal law and regulations. See section 161 of the Federal Clean Air Act (hereinafter "the Federal Act"). The Colorado Act directs the commission to develop a PSD program in accordance with part C of the federal Act for approval by the federal government. C.R.S. 1973, 25-7-203, -210 (Supp. 1980). Under both acts, the goal of prevention of significant deterioration is accomplished by establishing maximum allowable increases (hereinafter referred to as "increments") on the amount of additional ambient air pollutant concentrations permissible in areas having air quality better than the NAAQS.C.R.S. 1973, 25-7-201(1) (Supp. 1980); sections 163 and 166 of the Federal Act. To ensure that the increments are not exceeded, new major sources and modifications of major sources resulting in significant net emissions increases may not be constructed if an increment would be exceeded. In any case, a person constructing or modifying a major source must apply best available control technology ("BACT"). C.R.S. 1973,25-7-203 (Supp. 1980); section 165 of the Federal Act. The increment and BACT requirements are enforced through a permitting procedure. Major sources and modifications wishing to obtain a PSD permit must demonstrate through analyses and monitoring that their projected emissions will not exceed either the increments or the NAAQS.C.R.S. 1973, 25-7-206(2) (Supp. 1980); section 165 of the Federal Act; 40 C.F.R. 51.24.
The issue presented is whether the increments limitation, BACT and the corollary requirements may be imposed on minor sources even though not mandated by the Colorado or Federal Act. The answer is that although part 2 of the Colorado Act mandates that such requirements be applied to major sources and major modifications, part 2 also states that it is not intended to limit the means for preventing significant deterioration of air quality, C.R.S. 1973, 25-7-201(1) (Supp. 1980), and thus authorizes the commission to adopt additional means to accomplish that goal. See also C.R.S. 1973, 25-7-105(1)(c) (Supp. 1980). The Colorado Act contemplates that the commission has the authority to adopt regulations or standards not required by part C of the Federal Act when it states that such regulations or standards are adopted pursuant to the authority reserved to the states by section 116 of the Federal Act. C.R.S. 1973,25-7-105(8) (Supp. 1980). Therefore, the commission may in its discretion determine that to prevent significant deterioration it is necessary to impose similar requirements on minor sources as are mandated on major sources by part 2. This includes the requirements not to exceed the increments and to use BACT.
In addition to the authority of the commission under part 2 of the Colorado Act to regulate minor sources for the prevention of significant deterioration, it has the authority to require such sources to use BACT by its adoption as an emission control regulation.[2] BACT is defined as:
 (2) "Best available control technology" means an emission limitation based on the maximum degree of reduction of each air pollutant subject to regulation under this article emitted from or which results from any major stationary source or major modification which the division or board, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility through application of production processes and available methods, systems, and techniques, including fuel cleaning or treatment or innovative fuel combustion techniques for control of each such air pollutant. In no event shall application of best available control technology result in emissions of any air pollutants which will exceed the emissions allowed by any applicable standard established pursuant to section 111 or 112 of the federal act.
C.R.S. 1973, 25-7-202(2) (Supp. 1980). The key elements of BACT are "maximum degree of reduction . . . taking into account energy, environmental, and economic impacts and other costs . . . achievable . . . through application of . . . available methods, systems, and technologies." These same elements are among those required to be considered in the adoption of emission control regulations which are not limited in application to major stationary sources but apply to "significant" sources which may include many minor sources. C.R.S. 1973, 25-7-103(11), -106(1)(c), -109(1) (Supp. 1980). Therefore, pursuant to its authority to adopt emission control regulations, the commission may require BACT for minor but significant sources of pollutants located in or impacting areas having air quality better than the NAAQS.
SUMMARY
To briefly summarize my opinion, part 2 of the Colorado Act authorizes the commission to use means other than the specific requirements imposed on major sources to prevent significant deterioration. Such other means may include the imposition of PSD permit requirements on minor sources. The commission also has authority to require minor sources to apply BACT by the adoption of emission control regulations.
Very truly yours,
 J.D. MacFARLANE Attorney General
NATURAL RESOURCES
C.R.S. 1973, 25-7-202(5) C.R.S. 1973, 25-7-102
C.R.S. 1973, 25-7-201(1) C.R.S. 1973, 25-7-203
C.R.S. 1973, 25-7-210
C.R.S. 1973, 25-7-206(2) C.R.S. 1973, 25-7-105(1)(c) C.R.S. 1973, 25-7-105(8) C.R.S. 1973, 25-7-202(2) C.R.S. 1973, 25-7-103(11) C.R.S. 1973, 25-7-106(1)(c) C.R.S. 1973, 25-7-109(1)
HEALTH, DEPT. OF Air Quality Control Comm.
C.R.S. 1973, 25-7-201 et seq. authorizes the Air Quality Control Commission to impose PSD permit requirements on minor sources. The commission also has authority to require minor sources to apply BACT by the adoption of emission control regulations.
[1] (5) "Major stationary source" means any of the following stationary sources of air pollutants which emit, or have the potential to emit, one hundred tons per year or more of any air pollutant regulated under the federal act: Fossil fuel-fired steam electric plants of more than two hundred fifty million British thermal units per hour heat input, coal cleaning plants (with thermal dryers), kraft pulp mills, portland cement plants, primary zinc smelters, iron and steel mill plants, primary aluminum ore reductions plants, primary copper smelters, municipal incinerators capable of charging more than two hundred fifty tons of refuse per day, hydrofluoric, sulfuric, and nitric acid plants, petroleum refineries, lime plants, phosphate processing plants, coke oven batteries, sulfur recovery plants, carbon black plants (furnace process), primary lead smelters, fuel conversion plants, sintering plants, secondary metal production facilities, chemical process plants, fossil fuel boilers of more than two hundred fifty million British thermal units per hour heat input, petroleum storage and transfer facilities with a total storage capacity exceeding three hundred thousand barrels, taconite ore processing facilities, glass fiber processing plants, and charcoal production plants. Such term also includes any other stationary source which emits, or has the potential to emit, two hundred fifty tons per year or more of any air pollutant regulated under the federal act. Fugitive dust, emissions caused by indirect air pollution sources, emissions from internal combustion engines on any vehicle, and emissions resulting from temporary activities, such as construction or exploration, shall be excluded in determining whether a source is a "major stationary source". Except as otherwise provided in this subsection (5), for any source category, fugitive emissions shall be included in determining whether a source is a major stationary source only if the commission adopts regulations to include fugitive emissions for that source category.
[2] For example, the commission has adopted an emission control regulation requiring the application of BACT by oil shale production facilities. 5 C.C.R. 1001-8-6.B. IV.